1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   ERIC LEE,                                  Case No. C23-348RSL

10                        Plaintiff,           ORDER CONFIRMING
                                               ARBITRATION AWARD
11                  v.

12   AUTONATION INC., *et al.*,

13                        Defendants.

14

15        This matter comes before the Court on plaintiff's "Motion to Confirm Arbitration Award

16   and Enter Judgment" (Dkt. # 12) and defendants' "Counter Motion to Vacate" (Dkt. # 15).

17
     Having reviewed the motion, the counter motion, and the record herein, the Court GRANTS
18
     plaintiff's motion, DENIES defendants' counter motion, and makes additional determinations
19
20   regarding fees, costs, and interest as described below.

21
     **I.      Background**
22
23        This case arises from an employment dispute under the Washington Law Against

24   Discrimination ("WLAD") and the Age Discrimination in Employment Act ("ADEA").

25
     Dkt. # 1. Plaintiff Eric Lee is 65 years old and was employed by Porsche Bellevue for more than
26
27   30 years. *See* Dkt. # 13, Ex. 3 at 2, 7, 10. On November 30, 2021, Lee was terminated from

28

ORDER CONFIRMING ARBITRATION AWARD - 1

Porsche Bellevue at the age of 62. *Id*. Porsche Bellevue is owned by the defendant, AutoNation, Inc. *Id* at 2.

On March 31, 2023, the Court granted the parties' stipulated motion to stay the litigation pending arbitration. Dkts. # 9, # 10. As part of their stipulation to arbitrate, the parties agreed, in relevant part, that (1) Judge Regina Cahan at JAMS would be the arbitrator, (2) JAMS rules shall apply, (3) "[t]he arbitrator's award may be vacated only for the reasons set forth in the Washington Uniform Arbitration Act or the Federal Arbitration Act," and (4) "[a]ll types of relief that would otherwise be available in court shall be available to Plaintiff in arbitration." Dkt. # 10.

Following discovery and a four-day hearing, Judge Cahan ruled in favor of the plaintiff only on the WLAD claim, finding that plaintiff's age was a "substantial factor" in his termination. Dkt. # 13, Ex. 3 at 20–26. Pursuant to the WLAD, Judge Cahan awarded plaintiff a total of $2,493,912.96 as follows:

(a) Lost earnings: $1,125,542

(b) Lost benefits: $21,077

(c) Emotional damages: $500,000

(d) An offset for adverse tax consequences: $135,737

(e) Pre-judgment interest through April 1, 2024: $68,983

(f) Post judgment interest to accrue until the judgment is paid in full: amount to be determined[1]

(g) Attorney's fees through March 1, 2024: $642,573.96

Dkt. # 13, Ex. 3 at 32.

The award became final on March 28, 2024. Dkt. # 12 at 6. Plaintiff now moves to confirm the arbitration award. Dkt. # 12. Defendants do not dispute their liability resulting from the arbitrator's finding that Lee's age was a "substantial factor" in his termination. Dkts. # 13, Ex. 3 at 20; # 15. They challenge the arbitrator's award, moving to vacate or modify that award. Dkt. # 15.

## II.    Discussion

### A. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., "supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., L.L.C. v. Mattel, Inc*., 552 U.S 576, 582 (2008). If a party seeks to confirm an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9.

A court may vacate an award in four limited circumstances: (1) "where the award was procured by corruption, fraud, or undue means;" (2) "where there was evident partiality or

---

[1] Judge Cahan awarded "post-judgment interest at the statutory rate under RCW 4.56.110(3)(b)." Dkt. # 13, Ex. 3 at 32. The statute sets the rate at "two percentage points above the prime rate, as published by the board of governors of the federal reserve system on the first business day of the calendar month immediately preceding the date of entry." RCW 4.56.110(3)(b), Dkt. # 13, Ex. 8 at 4.

corruption in the arbitrators"; (3) "where the arbitrators were guilty of misconduct in refusing to postpone the hearing. . . or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). A court may modify an award in three circumstances: (1) "Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award"; (2) "Where the arbitrators have awarded upon a matter not submitted to them"; or (3) "Where the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(a–c).

These grounds for vacatur and modification "afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003). This limited review is grounded in "good reason." *Id*. "Arbitration is a dispute resolution process designed, at least in theory, to respond to the wishes of the parties more flexibly and expeditiously than the federal courts' uniform rules of procedure allow." *Id.*

### B. Analysis

Defendants seek to vacate the award based on two grounds. First, defendants claim the arbitrator exceeded her powers as described in 9 U.S.C. § 10(a)(4). Second, defendants claim the arbitrator committed misconduct as described in 9 U.S.C. § 10(a)(3). In addition, defendants

seek to modify the award, claiming the arbitrator miscalculated figures as described in 9 U.S.C. § 11(a). On all three of these claims, defendants have failed to demonstrate anything more than their disagreement with Judge Cahan's application of the law, interpretation of the evidence, and fee award decision-making. As both the FAA and the relevant caselaw make clear, a party's disagreement with the outcome of an arbitration is far from enough to justify vacatur or modification of the arbitrator's award.

### 1. The Arbitrator Did Not Exceed Her Authority.

This portion of defendants' argument relates to the arbitrator awarding Lee back pay even after Lee was fired from Jaguar Land Rover Bellevue (JLR), a job he obtained following his termination from Porsche Bellevue. Dkt. # 15 at 6. Defendants argue that Judge Cahan exceeded her powers because she was aware that a failure by Lee to mitigate damages from the loss of his job at Porsche Bellevue would require the tolling of back pay in any award, but still concluded that Lee's firing from JLR did not constitute a failure to mitigate damages. Dkts. # 13, Ex. 3 at 29–31; # 15 at 6–7.

"Arbitrators exceed their powers when they express a 'manifest disregard of law,' or when they issue an award that is 'completely irrational.'" *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (quotations omitted). "This is a high standard for vacatur; '[i]t is not enough . . . to show that the panel committed an error—or even a serious error.'" *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (alteration in original) (quotations omitted). Manifest disregard "means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Id.* (quotations

omitted). Instead, the record must show that "the arbitrators recognized the applicable law and then ignored it." *Id*. (quotations omitted). "[T]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack*, 586 F.3d at 1104 (alteration in original) (quotations omitted). A court may also vacate an award that is "completely irrational." *Comedy Club, Inc. v. Improv W. Assocs*., 553 F.3d 1277, 1288 (9th Cir. 2009). This standard "is extremely narrow and is satisfied only 'where [the arbitration decision] fails to draw its essence from the agreement.'" *Id*. (quotations omitted).

Here, the arbitrator and both parties all viewed the same holding as particularly relevant to the question of whether Lee's back pay should be tolled based on his termination from JLR. *See* Dkts. # 13, Ex. 3 at 30, # 18 at 7, # 19 at 3. In *Kloss v. Honeywell, Inc*., the Washington State Court of Appeals, Division 1, held: "The doctrine of mitigation of damages . . . prevents recovery for those damages the injured party could have avoided by reasonable efforts taken after the wrong was committed." 77 Wn. App. 294, 301 (1995). Once a mitigating employee accepts a new and "substantially equivalent" job, his duty to mitigate "includes the obligation to make reasonable and good faith efforts to maintain that job." *Id.* at 302. Judge Cahan noted two other relevant holdings. If an employee engages in a "willful loss of earnings," then back pay "is not to be awarded." *Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th Cir. 1980). However, being fired for cause is not a "willful loss of earnings" where an employee unintentionally committed an offense that justified being fired. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996) (finding that a trucker involved in an accident had

neither acted "willfully" nor "committed a gross or egregious wrong" that would, on its own, justify the tolling of back pay).

In deciding the back pay issue, Judge Cahan looked to these three decisions and to the arbitration record, which involved testimony from numerous witnesses and the admission of considerable evidence. Dkt. # 13, Ex. 3 at 2, 30. The *Kloss* decision was on point because it directly explains the requirements for mitigating damages in a situation like Lee's. 77 Wn. App. 294, 301 (1995). *Sangster* was an employment discrimination action under Title VII and *Thurman* was a race discrimination case under Title VII and 42 U.S.C. § 1981. *Sangster*, 633 F.2d 864 at 868 (9th Cir. 1980); *Thurman*, 90 F.3d 1160 at 1164 (6th Cir. 1996). Because Judge Cahan was finding for Lee under the WLAD, it was appropriate for her to "look to federal case law on Title VII." *Blackburn v. State*, 186 Wn.2d 250, 258 (2016). *See also Erickson v. Biogen, Inc.*, 417 F. Supp. 3d 1369, 1378 (W.D. Wash. 2019) ("The WLAD largely mirrors federal law, and 'courts should look to interpretations of federal anti-discrimination laws, including the ADA, when applying the WLAD.'") (quotations omitted).

Applying this caselaw to the facts of Lee's case, Judge Cahan found that while Lee was viewed by JLR's general manager as having performance issues and as not being a good fit for the job, there was no evidence that Lee had "engaged in any willful loss of earnings or anything less than reasonable and good faith effort to maintain his new employment." Dkt. # 13, Ex. 3 at 31. In other words, while there may have been "some things that obviously led to [Lee's] termination," as JLR's general manager testified, Judge Cahan did not see compelling evidence that Lee had acted intentionally or committed a gross or egregious wrong in the lead-up to his

ORDER CONFIRMING ARBITRATION AWARD - 7

termination from JLR. *Id*, Dkt. # 16, Ex. 1 at 1070. Judge Cahan's reasoning on this point does

not satisfy the "high standard" for vacatur of an arbitration award. *Lagstein*, 607 F.3d 634 at 641

(9th Cir. 2010). Defendants' attempts to show error by Judge Cahan are not enough. *Id*. Even if

Judge Cahan had shown a failure to "understand or apply the law," that would not be enough. *Id*.

"[T]here must be some evidence in the record, other than the result, that the arbitrators were

aware of the law and intentionally disregarded it." *Bosack*, 586 F.3d at 1104 (alteration in

original) (quotations omitted). There is no evidence of that sort here. Judge Cahan was aware of

the law and applied it to the facts of this case as she understood them. Therefore, defendants'

arguments under 9 U.S.C. § 10(a)(4) fail.

### 2.  The Arbitrator Did Not Engage In Misconduct.

Defendants' claim of misconduct centers on Judge Cahan's alleged "cherry-picking" of

two words spoken by JLR General Manager Dimitri Mordekhov during his testimony. Dkt. # 15

at 6, 10. Defendants assert that this alleged "cherry-picking" indicates Judge Cahan refused to

"consider the context" of those two words. *Id*. The two words, "good job," were quoted by

Judge Cahan in the "Findings of Fact" section in her "Corrected Final Award." *See* Dkt. # 13,

Ex. 3 at 17 (Judge Cahan writing, "Mordekhov testified that Lee did a 'good job' at JLR.").

Under 9 U.S.C. § 10(a)(3), vacatur based on an arbitrator's misconduct may be

appropriate when an arbitrator is guilty of (1) "refusing to postpone the hearing, upon sufficient

cause shown"; (2) "refusing to hear evidence pertinent and material to the controversy"; or

(3) "any other misbehavior by which the rights of any party have been prejudiced." Defendants

rest their argument on the second type of misconduct, refusal to hear pertinent and material

evidence. Dkt. #15 at 6. They allege that the "cherry-picking" of the words "good job" by Judge

Cahan means she "blatantly refused to consider" the "full testimony" of Mr. Mordekhov with

regard to the following full sentence, spoken by Mr. Mordekhov during his testimony before

Judge Cahan: "I would say [Lee] did a good job. He did fine for the period that he was there, but

there were some things that obviously led to the termination." Dkts. # 15 at 6, 10; # 16, Ex. 1 at

1070; # 19 at 3.

Whether or not the words "good job" in this sentence were subject to subsequent "cherry-

picking" by Judge Cahan, this testimony was indeed heard by Judge Cahan in the manner

contemplated by 9 U.S.C. § 10(a)(3), as demonstrated by the single case cited on this point by

defendants, *Lindsey v. Travelers Com. Ins. Co.* No. 22-16795, 2023 WL 8613598, at *1 (9th Cir.

Dec. 13, 2023). In *Lindsey*, misconduct by "refusing to hear evidence" occurred when the

arbitrator denied a discovery request that could have led to the arbitrator hearing evidence that

was "pertinent and material" to the case. *Id*. Here, in contrast, Mr. Mordekhov's testimony was

allowed and heard by Judge Cahan. Dkt. # 16, Ex. 1 at 1070.

What troubles defendants is the way Judge Cahan quoted Mr. Mordekhov's testimony in

her "Corrected Final Award," an action that defendants describe as a key step in the reasoning

Judge Cahan used to answer the question of whether Lee's termination from JLR constituted a

failure to mitigate damages. Dkts. # 19 at 3; # 15 at 6, 7, 10; # 16, Ex. 1 at 1070. But it is Judge

Cahan's "Findings of Fact" that use the "good job" quote, not her reasoning on the mitigation of

damages issue. *See* Dkt. # 13, Ex. 3 at 17, 29–31. Furthermore, that reasoning contains nuance

defendants appear to seek. Judge Cahan notes that "Mordekhov testified the job was ultimately

ORDER CONFIRMING ARBITRATION AWARD - 9

not a good fit, and that good fits are hard to find." Dkt. # 13, Ex. 3 at 31. She acknowledged "three events during Lee's employment" at JLR preceding Lee's termination. *Id*. At the same time, she found that those events did not demonstrate a failure by Lee to mitigate damages. *Id*. Thus, even if Judge Cahan's use of the "good job" quotation constituted a refusal to hear pertinent and material evidence—which it does not—Judge Cahan's use of the "good job" quotation does not appear to have resulted in any prejudicial effect. *See Lindsey*, No. 22-16795, 2023 WL 8613598, at *1 (9th Cir. Dec. 13, 2023) ("A party seeking the vacatur of an arbitration award must also establish that the misconduct was prejudicial.").

Defendants' other arguments alleging misconduct by Judge Cahan involve the supposed admission of hearsay evidence by Judge Cahan and a contention that Judge Cahan "substituted" her judgment for JLR's when she decided that Lee's conduct prior to his termination by JLR did not constitute a failure to mitigate damages. Dkts. # 15 at 7, # 19 at 5. Both arguments are unavailing, and both fail to meet the threshold established by 9 U.S.C. § 10(a)(3) and *Lindsey*. No. 22-16795, 2023 WL 8613598, at *1 (9th Cir. Dec. 13, 2023). Therefore, defendants' arguments under 9 U.S.C. § 10(a)(3) fail.

### 3.  No Miscalculation of Figures by the Arbitrator Has Been Shown.

A district court may order modification or correction of an arbitrator's award if "there was an evident miscalculation of material figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). Defendants allege a miscalculation by Judge Cahan that warrants modification of her award. Dkt. # 15 at 2 (stating, "These grounds are present here."). However, defendants do not

demonstrate or document any miscalculation. *See* Dkt. #15 at 12–14. Instead, defendants re-air

complaints about the practices of Lee's counsel when it comes to billing, staffing, testimony

preparation, and deposition videotaping. *Id*. Defendants believe the fees for these practices were

improperly included in the award Judge Cahan granted to Lee. *Id*. These complaints were all

presented by defendants in their February 23, 2024 arbitration filing, "Respondents' Response to

Claimant's Motion for an Award of Attorney Fees and Costs." Dkt. # 20, Ex. A. They were then

addressed in Judge Cahan's "Corrected Findings of Fact and Conclusions of Law Regarding

Attorney's Fees and Costs," dated March 27, 2024. Dkt. # 13, Ex. 7. The Court is puzzled as to

why defendants now re-air these complaints in support their allegations of miscalculation

warranting modification of Judge Cahan's award order under 9 U.S.C. § 11(a), while pointing to

no miscalculation. Because defendants do not demonstrate any miscalculation, their argument

for modification under 9 U.S.C. § 11(a) fails.

Defendants demonstrate the same failure to clearly link allegations with applicable

caselaw or relevant standards in the FAA when they suggest the fee award should be vacated

because courts "routinely" do so. Dkt. # 19 at 8. Defendants support their contention of routine

vacaturs by citing four non-controlling cases in which fee awards were indeed vacated. Dkts.

#15 at 12, # 19 at 8. But as plaintiff correctly points out, none of the four cases cited by

defendants is on point. Dkt. # 18 at 15. In the first case, a decision on attorney's fees was

vacated because the issue of attorney's fees had not been submitted to the arbitrators for

determination. *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1195 (11th Cir. 1995). That is not

the case here; the record plainly shows the issue of attorney's fees was submitted to Judge

Cahan for determination. Dkt. # 13, Ex. 7, Dkt. #20, Ex. A. In the second case, an award of

attorney's fees was vacated because a panel of arbitrators awarded the fees in violation of state

law, thus exceeding their powers as described in 9 U.S.C. § 10(a)(4). *Ameriprise Fin. Servs.,*

*Inc. v. Brady*, 325 F. Supp. 3d 219, 231 (D. Mass. 2018). Here, in contrast, the Washington Law

Against Discrimination entitles Lee to seek recovery of attorney's fees. RCW 49.60.010(2). In

the third case, an award of attorney's fees had "absolutely no support in the record" and so the

award was remanded to the arbitrator for reconsideration. *Mantaline Corp. v. PPG Indus., Inc.*,

No. 2:02CV269, 2006 WL 297263, at *8 (W.D. Pa. Feb. 7, 2006). Here, defendants do not

allege a lack of support in the record for the fees. Instead, they believe that certain fees

appearing in the record should not have been awarded. Dkts. #15 at 12, # 19 at 8. In the fourth

case, an arbitrator's award was vacated under 9 U.S.C. § 10(a)(4) because attorney's fees were

not apportioned by cause of action in the award, even though the defendant had stipulated that

its attorney's fees would be apportioned by cause of action. *Ergobilt, Inc. v. Neutral Posture*

*Ergonomics, Inc.*, No. CIV.A.3:97-CV-2548-L, 2002 WL 1489521, at *8 (N.D. Tex. July 9,

2002). Here, in contrast, the relevant stipulation by the parties is in line with the arbitrator's

award. Dkt. # 10 at ¶ 8. Therefore, defendants' citations to these four cases end up

demonstrating defendants' failure to link its argument to appropriate caselaw.

> Defendants also fail to clearly link any of their arguments regarding Judge Cahan's fee

award to any of the specific justifications for vacatur outlined in 9 U.S.C. § 10(a). The closest

defendants come is the argument that by awarding fees for work defendants deem "clerical,"

Judge Cahan "disregarded the law." Dkt. # 19 at 10. But, as discussed above, while vacatur may

be appropriate under 9 U.S.C. § 10(a)(4) when an arbitrator exceeds her powers by expressing a "manifest disregard of law," "there must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack*, 586 F.3d at 1104 (9th Cir. 2009) (quotations omitted). Because defendants fail to point to any evidence of this sort, defendants' argument for vacatur based on the fee award fails.

### 4. Plaintiff is Entitled to Fees and Costs for Motions Filed With this Court Since the Arbitration Award.

In an action to confirm an arbitration award, a court may assess attorney's fees where they are permitted by statute. *Koruga v. Fiserv Correspondent Servs., Inc.*, 40 F.App'x 364, 366 (9th Cir 2002) (finding it appropriate to award attorney's fees to the party defending an arbitration award where the Washington State law underlying the award allowed for attorney's fees). Here, Judge Cahan found for Lee under the Washington Law Against Discrimination, which allows for attorney's fees. RCW 49.60.030(2). In addition, where a party has "presented meritless opposition" to an arbitrator's fee award, thereby prolonging the process of confirming of the award, there is "no reason" the costs should be imposed on the party seeking confirmation. *Rostad & Rostad Corp. v. Inv. Mgmt. & Rsch., Inc.*, 923 F.2d 694, 697 (9th Cir. 1991) (awarding double costs for "prolonged and frivolous resistance.").[2] Defendants do not

---

[2] In the context of a labor arbitration award, when a party seeks attorney's fees for defending the award against an attempt by the other party to have it vacated, the party seeking attorney's fees must show that the attempt at vacatur was brought "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Virginia Mason Hosp. v. Washington State Nurses Ass'n*, 511 F.3d 908, 917 (9th Cir. 2007) (citing *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc.*, 84 F.3d 1186, 1192 (9th Cir. 1996)). However, this case does not involve a labor arbitration award.

dispute that plaintiff can recover reasonable fees for confirming the award. Dkt. # 19 at 8, n.4. Therefore, defendants shall pay plaintiff's attorney's fees as outlined in Judge Cahan's award and, in addition, shall pay the reasonable fees and costs incurred by plaintiff's attorneys since the award. Within fourteen days of this Court's order confirming Judge Cahan's award, plaintiff shall, as proposed in Dkt. #12 at 8, submit a supplemental fee petition.

### 5.   Plaintiff is Entitled to Pre-Judgment Interest.

Judge Cahan awarded plaintiff pre-judgment interest on the back pay award based on an anticipated judgment date of April 1, 2024. Dkt. # 13, Ex. 3 at 31–32, Ex. 8 at 3–4. Defendants shall pay pre-judgment interest on the back pay up to the date of the arbitral award. In addition, because Judge Cahan "calculated with precision" the total amount of the arbitral award, which has not yet been paid to plaintiff, defendants should be compelled to "disgorge the benefit" of holding that precisely calculated award amount – $2,493,912.96 – by paying plaintiff pre-judgment interest on the total award amount. Dkt. # 12 at 9; *Mahler v. Szucs*, 135 Wn.2d 398, 429, order corrected on denial of reconsideration (Wash. 1998). That pre-judgment interest shall accrue from the date of the final arbitral award until the date of entry of this judgment. As proposed in Dkt. # 12 at 8–9, plaintiff shall submit a calculation of this additional pre-judgment interest to this Court.

### 6.   Plaintiff Is Entitled to Post-Judgment Interest.

Judge Cahan also awarded plaintiff "post-judgment interest on the award of backpay, front-pay, emotional distress damages, fees and costs, under the WLAD, under RCW 4.56.110(3)(b), at an interest rate of 'two percentage points above the prime rate, as published

by the board of governors of the federal reserve system on the first business day of the calendar month immediately preceding the date of entry.'" This post-judgment interest "will accrue on the judgment amounts, from the date judgment is entered until such time as Respondent satisfies the judgment amounts in full." Dkt. # 13, Ex. 3 at 32, Ex. 8 at 4. The Court confirms Judge Cahan's award of post-judgment interest.

### III.   Conclusion

For all the foregoing reasons, plaintiff's "Motion to Confirm Arbitration Award and Enter Judgment" (Dkt. # 12) is GRANTED and defendants' "Counter Motion to Vacate" (Dkt. # 15) is DENIED.

The arbitrator's award is CONFIRMED. Supplemental briefing will be filed with this Court, as described above, regarding additional attorney's fees and pre-judgment interest.

IT IS SO ORDERED.

DATED this 21st day of October 2024.

Robert S. Lasnik
United States District Judge

ORDER CONFIRMING ARBITRATION AWARD - 15